UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TODD ROBERT STRZELCZYK,

        Plaintiff,

v.

**DECISION AND ORDER**
17-CV-1155S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

1.      Plaintiff Todd Robert Strzelczyk brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.      Plaintiff protectively filed applications for DIB and SSI with the Social Security Administration ("SSA") on November 6, 2013 and December 3, 2013, respectively. (R.[1] at 93-94, 169-178). Plaintiff alleged disability since May 23, 2013[2] (R. at 10) due to executive functioning disorder, hernia, and shoulder injury. (R. at 200). Plaintiff's applications were denied (R. at 110-17), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 167).

3.      On April 12, 2016, ALJ Melissa Jones held a hearing at which Plaintiff—assisted by a non-attorney representative—appeared and testified. (R. at 31-78).

---

[1] Citations to the underlying administrative record are designated as "R."
[2] Plaintiff initially alleged disability beginning October 26, 2011 (R. at 196, 208), however at the hearing, this alleged onset date was amended to May 23, 2013 (R. at 38).

Vocational Expert ("VE") Susan Rowe also appeared and testified via telephone. Id. At the time of the hearing, Plaintiff was 40 years old (R. at 169), with a 12th grade-equivalent education (R. at 58, 201) and past work experience as an assistant manager, garage door technician, pizza cook, delivery driver, cashier, and assembler. (R. at 43, 69-70, 72-73, 201).

4. The ALJ considered the case *de novo* and, on May 9, 2016, issued a written decision denying Plaintiff's applications for benefits. (R. at 10-25). On September 15, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-6). Plaintiff filed the current action, challenging the Commissioner's final decision,[3] on November 9, 2017. (Docket No. 1).

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8, 12). Plaintiff filed a response on July 31, 2018 (Docket No. 13), at which time this Court took the matter under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[3] The ALJ's May 9, 2016 decision became the final decision of the Commissioner of Social Security on this matter when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

3

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 23, 2013. (R. at 12). At step two, the ALJ found that Plaintiff has the severe impairments of attention deficit hyperactivity disorder/anxiety ("ADHD") and adjustment disorder/anxiety. (R. at 13). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-15).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work "with only the non-exertional limitations that he is restricted to simple routine and repetitive tasks not at a production rate pace and he can have only occasional interaction with supervisors, coworkers, or the public." (R. at 15).

13. At step four, the ALJ found Plaintiff capable of performing his past relevant work as an assembler. (R. at 23). Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 24).

14. Plaintiff argues that remand is required because the ALJ improperly evaluated medical opinion evidence. (Docket Nos. 8 at 13-19, 13 at 1-3). For the reasons that follow, this argument fails.

15. Plaintiff first argues that the ALJ failed to provide good reasons for rejecting the opinion of Dr. Yap, Plaintiff's treating psychiatrist.

16. Dr. Yap performed an initial psychiatric assessment of Plaintiff on Sept 4, 2013. (R. at 320-22). Plaintiff reported problems with keeping track of time, lack of motivation, anxiety, depression, and decreased memory. Id. Citing Plaintiff's reports of prior alcohol-related blackouts, Dr. Yap opined that Plaintiff had "some problems with

5

drinking in the past" and noted "there is still some significant drinking going on." Id.  Upon examination, Plaintiff was friendly and cooperative with no significant depression or anxiety and demonstrated average IQ and fair memory for remote and recent events, although Plaintiff's insight and judgment were found to be poor.  Id.  Dr. Yap's treatment plan called for medication (Celexa), counseling, and monitoring of Plaintiff's drinking.  Id.

17. On October 8, 2013, Plaintiff reported improvements in mood, depression, and anxiety with medication, but stated that when playing a live video game, "he gets quite anxious and panicky and he gets excited […] to win the game."  (R. at 372).  Ten days later, Plaintiff—who admitted continued alcohol use—exhibited some significant anxiety and depression symptoms along with some mood lability and complained of difficulty sleeping.  (R. at 373).  Plaintiff stated that "he cannot work because his sleep schedule is very erratic."  Id.  Dr. Yap noted Plaintiff's functional ability "seems to have fluctuated in the past" and prescribed a mood stabilizer.  Id.

18. Dr. Yap noted that Plaintiff continued to experience anxiety and an erratic sleep pattern on November 15, 2013, following a break-up.  (R. at 374).  However, progress notes from December 2013 and January 2014 indicate Plaintiff reported improvements in mood, anxiety, and sleep.  (R. at 375-76).

19. On March 27, 2014, Plaintiff's mood was fair and he reported having started a new relationship.  (R. at 377).  Plaintiff described his compliance with prescribed medication as "judicial" and expressed a willingness to participate in vocational rehab.  Id.

20. In May, Plaintiff's mood was better, but difficulties with sleep continued.  (R. at 378).  Dr. Yap increased his mood stabilizer dosage and Plaintiff planned to attend a sleep clinic.  Id.

21. On June 27, 2014, Plaintiff reported a "flare up with his anxiety" while helping a friend in his garage. (R. at 379). Plaintiff described the work as "dangerous" because something heavy could have fallen on him and reported feeling shaky while performing the work, but persevered to complete the task. Id. Dr. Yap noted that Plaintiff continued to show a significant level of anxiety and increased his Celexa dosage. Id. Dr. Yap also noted that Plaintiff again reported inconsistent compliance with treatment (skipping medication doses) and counseled him about reducing alcohol consumption. Id.

22. On August 1, 2014, Plaintiff reported an upset stomach and mood swings. (R. at 380). Dr. Yap noted that Plaintiff's medications could cause stomach upset and changed his prescriptions. Id. Plaintiff also indicated that he had good news: his mother's friend was willing to perform "neuropsych testing." Id.

23. Plaintiff was more depressed and anxious on September 26, 2014, after his parents told him he must move out in 30 days. (R. at 381). Plaintiff did not know where he would live after that and admitted to drinking three to five times the prior week, consuming six beers each time. Id. Dr. Yap noted that it was possible that Plaintiff "is minimizing his drinking" and encouraged him to go for a substance abuse evaluation, but Plaintiff declined. Id.

24. On April 1, 2014, Dr. Yap completed a mental functional limitation evaluation form in which he diagnosed Plaintiff with adjustment disorder with anxious and depressed traits and ruled out personality disorder. (R. at 385-87). Id. Dr. Yap described Plaintiff's "long history of tardiness due to sleep problems and deficits managing time" and noted that "[Plaintiff] maintains that he cannot focus or concentrate, is easily distracted and has lost many jobs due to this and a consistent pattern of lateness." Id.

25. Dr. Yap opined that Plaintiff would be significantly limited (able to function less than 59% of the time) with respect to most areas of functioning, including any ability to: follow work rules; function independently; maintain attention and concentration; understand, remember, or carry out simple job instructions; maintain personal appearance; and demonstrate reliability. Id. Dr. Yap also opined that Plaintiff's described functional limitations would not persist if Plaintiff stopped using drugs and/or alcohol. Id.

26. The ALJ gave little weight to Dr. Yap's April 2014 opinion of Plaintiff's functional limitations, finding the opinion inconsistent with Dr. Yap's own treatment notes that indicate Plaintiff reported improvements and an ability to complete tasks, and because Dr. Yap indicated the limitations would not persist if Plaintiff ceased to use drugs and/or alcohol. (R. at 20). The Court finds no error in this evaluation.

27. "[A claimant's] drug and alcohol abuse do not preclude a grant of Social Security disability benefits" where other severe impairments are found "independently disabling." Johnson v. Astrue, 493 F. Supp. 2d 652, 659, 2007 U.S. Dist. LEXIS 46662, *17 (W.D.N.Y. June 2007). However, the burden rests on the claimant to "show that even if his substance abuse were discounted that his other impairments would still render him disabled." Kowalske v. Astrue, 2011 U.S. Dist. LEXIS 150717, *18 (W.D.N.Y. Dec. 2011); see also Cage v. Astrue, 2009 U.S. Dist. LEXIS 92727, *12 (W.D.N.Y. Oct. 2009), aff'd 2012 U.S. App. LEXIS 17371 (2d Cir. 2012) ("Plaintiff has the burden of proving that absent her drug and alcohol abuse, she would still be disabled.")

28. Because Dr. Yap opined that Plaintiff's functional limitations would not persist independent of his drug and/or alcohol use, Plaintiff has not met this burden.

8

29. Plaintiff also argues that the ALJ erred in evaluating the opinion of another treating psychiatrist, Dr. Hak Ko. (Docket No. 8 at 17-19). A mental functional limitation evaluation form signed by Dr. Ko on March 14, 2016 indicates diagnoses of unspecified anxiety and ADHD and ruled out alcohol abuse. (R. at 395-97).

30. Here, Dr. Ko opined that Plaintiff is incapable of performing appropriately, effectively, and on a sustained basis even 60% of the time in any area of functioning (occupational, performance, or personal-social). Id. Plaintiff's abilities to follow work rules; respond to changes in a routine work setting; function independently; maintain attention and concentration; understand, remember, and carry out complex job instructions; demonstrate reliability; and maintain personal appearance were rated lowest, with Dr. Ko opining Plaintiff could perform adequately in these areas less than 30% of the time. Id.

31. Handwritten notes describe Plaintiff's difficulties with stress management, focus, and concentration as well as his poor hygiene and time management. Id. In response to a question about how long these limitations have existed to this degree of severity, it is noted "ADHD since teen years." (R. at 397).

32. Dr. Ko indicated that Plaintiff's described functional limitations would persist "to a degree" if he stopped using alcohol and/or drugs, and explained:

> [Plaintiff] presents to session smelling of alcohol as observed by writer, office staff, and psychiatrists. [Plaintiff] admits to moderate drinking and does not feel it is a problem. Alcohol abuse/dependence can exacerbate symptoms of anxiety and can contribute to lack of focus and motivation. Symptoms may decrease but would likely still be present if [Plaintiff] discontinued alcohol use.

Id.

33. The ALJ gave little weight to this opinion because it was "formed based upon an examination [where Plaintiff] was observed to be under the influence of alcohol" and "appear[ed] to rest largely on [Plaintiff's] subjective complaints and history, which are not supported by the medical evidence of record." (R. at 20).

34. The Court finds no error in this evaluation. The relevant inquiry before the ALJ is whether Plaintiff would be disabled if he stopped using drugs or alcohol. Dr. Ko's opinion describes Plaintiff's symptoms and limitations only as exacerbated by his drug or alcohol use. (R. at 395-97). As such, this opinion provides little insight into the effect or severity of any impairments that would persist in the absence of Plaintiff's drinking. Thus, the ALJ did not err in giving Dr. Ko's opinion little weight.

35. Plaintiff argues in the alternative that even though the ALJ had good reasons to give little weight to this opinion, she should have "recontacted Dr. Ko for the basis of his opinion." (Docket No. 8 at 19). This argument is unavailing.

36. The duty to seek clarification of a medical opinion arises only when the medical record is incomplete or otherwise insufficient to allow the ALJ to determine whether a claimant is disabled. See Jasen v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 138661, *35 (W.D.N.Y. Aug. 2017) ("[T]he relevant inquiry is whether the record was sufficient to support the ALJ's RFC assessment"); see also Kunkel v. Comm'r of Soc. Sec., 2013 U.S. Dist. LEXIS 117911, 2013 WL 4495008, *16 (W.D.N.Y. 2013) ("[T]he issue is whether the record was adequate to permit the ALJ to determine whether or not [p]laintiff was disabled").

37. Here, the record—which is not alleged to be incomplete—contains other medical opinions that are not restricted to an examination of symptoms or limitations

made more severe by alcohol or drug use. The ALJ gave great weight to three of these opinions. (R. at 21-22).

38. The ALJ gave great weight to the opinion of consulting examiner Dr. Santarpia, who performed a psychiatric evaluation on February 20, 2014. (R. 336-39). Dr. Santarpia's mental status examination found Plaintiff well-groomed, with appropriate eye contact, speech and affect, and euthymic mood. (R. at 337). Plaintiff's attention, concentration, and memory skills were all intact, and he exhibited average cognitive function with fair insight and judgment. (R. at 338).

39. Dr. Santarpia opined that Plaintiff is mildly impaired with respect to performing complex tasks independently and that he has some difficulties due to distractibility, but that he could "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits." Id. Dr. Santarpia is familiar with Social Security regulations and the ALJ found her opinion to be thoroughly explained as well as consistent with her clinical findings and Plaintiff's reported activities. (R. at 23).

40. The ALJ also gave great weight to the opinions of treating physician Dr. Gullickson, and consulting examiner Dr. Liu. (R. at 22). Dr. Gullickson opined that Plaintiff did not have a marked restriction in his daily activities and could perform heavy work. (R. at 370-71). Results of Dr. Liu's physical examination of Plaintiff were unremarkable, and he opined that Plaintiff has no limitation for routine activities. (R. at 341-44). The ALJ found these opinions to be consistent with clinical findings and the

medical record, and so afforded each opinion great weight.  Plaintiff does not point to any insufficiency in this evidence, nor to any missing records, so this Court finds that the ALJ was not under an obligation to recontact Dr. Ko.

41. In this case, the ALJ has given good reasons for her evaluation of the medical opinion evidence and there is no indication the record is inadequate as a basis for a disability determination.  In fact, the very opinions Plaintiff would see the ALJ bound to adopt support only that Plaintiff's functional limitations would not persist if he stopped drinking.  For the foregoing reasons, the Court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:	March 28, 2019
	Buffalo, New York


	/s/William M. Skretny
	WILLIAM M. SKRETNY
	United States District Judge